IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| KELLY W. KENT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:17-CV-00257-DGK |
| | ) | |
| SETERUS, INC., LERETA, LLC and | ) | |
| QUICKEN LOANS INC., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING IN PART DEFENDANT SETERUS'S MOTION TO DISMISS

This case arises out of unpaid real estate taxes. Plaintiff Kelly Kent ("Kent") alleges Defendants collected monthly escrow payments from him, earmarked for his real estate taxes, but never actually paid the monies over to the taxing authority, thereby causing his real estate taxes to fall into arrears. Kent sued Defendants for violations of the Real Estate Settlement Practices Act ("RESPA"), violations of the Missouri Merchandising Practices Act ("MMPA"), various common law negligence claims, and breach of contract.

Now before the Court is Defendant Seterus, Inc.'s ("Seterus") motion to dismiss Kent's claims (Doc. 10). As explained below, Kent's motion is GRANTED IN PART.

**Background**

The amended complaint (Doc. 28) alleges the following:

In October 2007, Kent purchased a condo in Chicago, Illinois, with the proceeds from a mortgage loan with Capital Funding Mortgage Company, LLC, ("CFMC") and a loan with First American Bank ("FAB"). Plaintiff lived in the condo as his primary residence until April 2011, when he relocated to Kansas City, Missouri. He moved for several reasons including, a

"downturn in the economy" and to care for an ill parent. Am. Compl. (Doc. 28 ¶ 64-64.2). Kent alleges he is actively seeking employment in Chicago and intends to move back into the condo.

During the time Plaintiff was in Kansas City, he decided to rent the property to friends and family. The rate he charged was lower than his monthly expenses on the condo. From April 2011 through March 2017, Kent rented the condo reporting the rental income and expenses on his yearly tax return, claiming a loss each year. From April 2011 until July 2012, the loss was $800 per month and from August 2012 through March 2017, the loss was $400 per month.

On July 19, 2012, Kent refinanced the CFMC mortgage with Defendant Quicken Loans Inc. ("QLI"). The QLI loan called for property taxes to be held in an escrow account. It also stated that Kent was to make periodic payments for taxes and that QLI "shall apply the funds to pay escrow items no later than time specified under RESPA." Am. Compl. ¶ 15.4. The QLI loan also states that QLI shall provide Kent an annual accounting of the escrow items. The QLI loan included a 1-4 Family Rider excusing Kent from occupying the home, which was otherwise required. Another section of the QLI loan alerted Kent that another company could service his QLI loan, meaning collecting the payments due and performing the "other mortgage loan servicing obligations" as defined in the document. Am. Compl. ¶ 15.6.

On September 1, 2012, QLI assigned, sold, or transferred the servicing of Plaintiff's QLI loan to Seterus. Sometime later, QLI authorized Seterus to outsource the property tax reporting and monitoring services on Plaintiff's loan to Lereta, LLC ("Lereta").

Plaintiff made timely payments on his loan and escrow items. Plaintiff received yearly mortgage statements reflecting the beginning and ending balance of his loan, beginning and end balance of his escrow account, and real estate taxes paid.

On November 10, 2016, Plaintiff learned his 2012 real estate taxes owed to Cook County, Illinois, had been sold to ATCF II Illinois, LLC ("ATCF") at the county's annual tax sale, due to non-payment. Plaintiff later learned that his real estate taxes for years 2013, 2014, and 2015 had also not been paid, despite his yearly mortgage statements indicating they had. On that same day, Plaintiff contacted Seterus and it indicated it would research the issue. On November 16, 2016, Plaintiff contacted Seterus again and Seterus responded that the issue would be resolved by November 27, 2016. On November 30, 2016, Plaintiff called Seterus a third time and Seterus stated there was an issue with the property account number and that issue had been resolved.

On December 8, 2016, Plaintiff received an escrow account statement indicating the account had a deficiency of $4,252.86. Then on January 3, 2017, Defendants redeemed the delinquent real estate taxes, including those sold to ATCF, for $9,782.70. This redemption payment included penalties of $1,176.56. Kent continued to receive statements claiming the escrow account had a shortage. Kent claims his escrow payment increased to cover the shortfall caused at least in part by the penalties assessed for the late payment of his taxes.

Kent sued Seterus and Lereta for violations of RESPA, violations of the MMPA, various common law negligence claims, and breach of contract. Seterus moved to dismiss the claims against it. After the motion was fully briefed, Kent moved to amend the complaint to add QLI as a party and clarify certain facts alleged. In granting the motion to amend his complaint, the Court permitted the parties to file supplemental briefing on the pending motion to dismiss.

**Standard**

To survive a 12(b)(6) motion to dismiss, the complaint must do more than recite the bare elements of a cause of action. *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009). Rather, it must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007). Although a complaint is not required to have detailed factual allegations, a plaintiff must provide more than mere "labels and conclusions" or "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 545. In reviewing the complaint, the court assumes the facts are true and draws all reasonable inferences from those facts in the plaintiff's favor. *Monson v. Drug Enf't Admin.*, 589 F.3d 952, 961 (8th Cir. 2009).

## Discussion

Seterus argues the amended complaint should be dismissed in its entirety because Kent fails to state a claim against it.

### I. Kent fails to state a claim against Seterus under RESPA.

Seterus argues Kent's Count I, violations of RESPA, fails because: (1) the claims are barred by the three-year statute of limitations; and (2) RESPA does not apply because the QLI loan was primarily used for a business or commercial purpose. Because the Court finds RESPA does not apply, it is unnecessary to determine whether the claims are barred by the statute of limitations.

RESPA does not apply to credit transactions involving extensions of credit "primarily for business, commercial, or agricultural purposes[.]" 12 U.S.C. § 2606(a)(1). RESPA instructs that this exclusion should be the same as the exclusion used in the Truth in Lending Act ("TILA"), 15 U.S.C. § 1603(1). TILA is only applicable to consumer credit, defined as credit secured for "personal, family, or household purposes" and excludes other types of credit, including credit "primarily for business, commercial, or agricultural purposes." 15 U.S.C. § 1603(1); 12 C.F.R. § 226.2(a)(12). Thus for Kent's RESPA claim to stand, his QLI loan must have been for personal, family, or household purposes.

The Official Staff Commentary to the regulations explains, a loan for a rental property that the borrower does not intended to occupy is generally treated as one for a business purpose. 12 C.F.R. § 226.3, Supp. I, Subpt A, Cmt 3(a)(4) ("Credit extended to acquire, improve, or maintain rental property that is not owner-occupied is deemed to be for business purposes."); *see Johnson v. Wells Fargo Home Mortg., Inc.*, 635 F.3d 401, 417 (9th Cir. 2011) (stating Official Staff Commentary is controlling "[u]nless demonstrably irrational.") (quoting *Ford Motor Credit co. v. Milhollin*, 444 U.S. 555, 565 (1980)).

A refinance loan[1] used to pay off existing debt may be characterized as an acquisition loan. *See Woods v. Wells Fargo Bank, N.A.*, No. 6:13-00457-AA, 2014 WL 334253, at *3 (D. Or. Jan. 28, 2014). In other words, while the QLI loan refinanced the CFMC loan, it is considered a loan to acquire, improve, or maintain the condo. The only issue then is whether the QLI loan was taken out for a commercial or personal purpose.

Kent argues he meets the personal purpose requirement because he initially purchased the condo to live in it and his current absence from the property should not transform that personal purpose into a business purpose. Kent relies on *Heejong Chung v. U.S. Bank, N.A.*, 250 F. Supp. 3d 658, 679 (D. Haw. 2017), and urges the Court to look at the "transaction as a whole" rather than the current use of the condo. *Heejong* is distinguishable from the facts in this case. While the *Heejong* plaintiff lived in his home and later converted it to a rental, his case arose out of the original loan transaction, not a refinanced loan as in Kent's case. The court in *Heejong* looked at the plaintiff's intent to reside in the home when the original loan was executed, not the current condition of the home as a rental, to determine that RESPA applied. Here, the loan at issue was executed after Kent's condo was already used as a rental.

---

[1] RESPA defines "refinancing' as "a transaction in which an existing obligation that was subject to a secured lien on residential real property is satisfied and replaced by a new obligation undertaken by the same borrower and with the same or a new lender." 12 C.F.R. § 1024.2(b).

Kent further argues that he personally subsidizes the costs of the condo each month and reports a loss on his tax return as it relates to the rental activity. However, merely not profiting from the rental activity does not support a finding that the loan was for a personal purpose. *See Woods*, 2014 WL 334253, at *4 (finding that even though the plaintiff did not profit from the lease, the property was a non-owner occupied rental and thus, the loan was for a business purpose).

Here, the facts establish the QLI loan was obtained for a commercial purpose. When the QLI loan was executed, the condo had been used as a rental for over a year. *See Edwards v. Ocwen Loan Servicing, LLC*, 24 F. Supp. 2d 21, 27 (D.D.C. 2014) (holding because plaintiff did not reside in the home, nor intend to, when she refinanced the mortgage, the debt was not primarily for personal, family, or household purposes). Further evidencing a commercial purpose is that the QLI loan documents contain a "1-4 Family Rider." *See Gonsalves-Carvalhal v. Aurora Bank, FSB*, No. 1:14-CV-151-SCJ-LTW, 2016 WL 5339695, at *5 (N.D. Ga. July 1, 2016), *report and recommendation adopted,* No. 1-14-CV-151-SCJ, 2016 WL 5376295 (N.D. Ga. Aug. 10, 2016) (finding the 1-4 Family Rider for Assignment of Rents the plaintiff executed as part of his Security Deed suggests that the property was intended to be used as rental property at the time of the transaction).

While Kent initially lived in the condo as his personal residence, and states he intends to return, this does not overcome all of the other facts that support finding that the QLI loan was executed for a business purpose. Thus, Plaintiff's RESPA claim in Count I is DISMISSED WITHOUT PREJUDICE.

## II. Plaintiff states a claim for breach of fiduciary duty.

Next, Seterus argues Kent has not established there was a fiduciary relationship between them and thus, his claim for breach of fiduciary duty must be dismissed.

It is not clear whether Missouri law[2] recognizes a fiduciary relationship between a borrower and a loan servicer who holds funds in escrow for purpose of paying a borrower's taxes. *See Hutcheson v. JPMorgan Chase Bank, N.A.*, No. 6:14-CV-03499-MDH, 2015 WL 1401225, at *4-5 (W.D. Mo. Mar. 26, 2015). It is clear, however, that there is no fiduciary relationship between a bank as a lender and its customer as a borrower. *UT Commc'ns Credit Corp. v. Resort Dev., Inc.*, 861 S.W.2d 699, 710 (Mo. Ct. App. 1993). In determining the existence of a fiduciary relationship, courts look to determine if a confidential relationship exists where one person relies upon and trusts the other with the management of his property or business affairs. *Shervin v. Huntleigh Sec. Corp.*, 85 S.W.3d 737, 741 (Mo. Ct. App. 2002).

Assuming, without deciding that Missouri courts would recognize a fiduciary relationship between a loan servicer who holds funds in escrow for real estate taxes, and a borrower, Kent has pled adequate facts to support such a claim. He alleges he submitted his escrow payments with the expectation that Seterus would collect the payments, hold them until payment was due, and then remit the payments to the county on behalf of his account. Thus Kent has alleged sufficient facts to state a claim. The motion to dismiss Count IV is DENIED.

## III. Kent states a breach of contract claim.

Kent alleges Seterus is liable for breach of contract because it breached its duty to properly service his loan by failing to timely pay his real estate taxes. Seterus argues Kent's breach of contract claim must be dismissed because Seterus, as the loan servicer, is not a party to the loan between QLI and Kent, and therefore cannot be held responsible for any alleged breach.

---

[2] The parties do not dispute Missouri law applies to the remaining claims.

In order for a party to be bound by a contract, a court must find there was privity of contract. *Baisch & Skinner, Inc. v. Bair*, 507 S.W.3d 627, 632 (Mo. Ct. App. 2016). "The doctrine of privity means that a person cannot acquire rights or be subject to liabilities *arising under* a contract to which he is not a party." *Id.* "Obligations arising out of a contract are due only to those with whom it is made; a contract cannot be enforced by a person who is not a party to it or in privity with it." *Id.* (quoting *RGB2, Inc. v. Chestnut Plaza, Inc.*, 202 S.W.3d 409, 416 (Mo. Ct. App. 2009)).

In this case, Kent alleges QLI assigned a portion of its obligations under the loan to Seterus. The general rule of assignment is that the assignee occupies "the same position with respect thereto that his assignor occupied." *United Fin. Plan, Inc. v. Parkview Drugs, Inc.*, 250 S.W.2d 181, 184 (Mo. Ct. App. 1952); *see Marvin's Midtown Chiropractic Clinic, LLC v. State Farm Mut. Auto. Ins. Co.*, 142 S.W.3d 751, 754 (Mo.Ct.App.2004) ("An assignment . . . transfers to another all or part of one's property, interest, or rights.").

Viewing the facts in light most favorable to Kent and making all reasonable inferences from those facts in his favor, the Court finds Kent has pled sufficient facts to establish a breach of contract claim, but barely. Kent alleges QLI assigned the servicing portion of the QLI loan to Seterus, including the provision to collect escrow payments and remit the property taxes. Further, he alleges Seterus breached the provision of the QLI loan that stated the real estate taxes would be remitted to the taxing authority. These facts, if proven, may establish both a contractual privity between Kent and Seterus and a breach of the QLI loan. Thus, Seterus's motion to dismiss Count III is DENIED.

### IV. The motion to dismiss the negligence claims is denied because Defendant may have owed Kent a duty of care.

Next, Seterus argues Kent's negligence-based claims, Counts V-VII, fail as a matter of law because Seterus did not owe a duty of care to Kent.

The question of duty is an issue of law. Under Missouri law:

> When a person possesses knowledge or skill superior to that of an ordinary person, the law requires of that person conduct consistent with such knowledge or skill . . . . A professional person owes a client a duty of care commensurate with the degree of care, skill and proficiency commonly exercised by ordinarily skillful, careful and prudent professionals.

*Bus. Men's Assurance Co. of Am. v. Graham,* 891 S.W.2d 438, 453 (Mo. Ct. App. 1994) (quotation marks and citation omitted). In addition:

> Where the parties have entered into a contract, [Missouri's] common law has imposed the duty to perform with skill, care, and reasonable expedience and faithfulness in regard to the thing to be done or accomplished within the contract. The negligent failure to observe and perform any portion of that duty gives rise to an action in tort as well as an action for breach of contract.

*Autry Morlan Chevrolet Cadillac, Inc. v. RJF Agencies, Inc.*, 332 S.W.3d 184, 193 (Mo. Ct. App. 2010) (citations omitted).

Here, one of the things to be accomplished by the contract was paying the real estate taxes on Kent's condo. The amended complaint alleges the QLI loan states that the escrow funds paid by Kent would be applied to the underlying obligation. Kent alleges Seterus, as assigned by QLI, held itself out as possessing superior knowledge or skill by providing an assurance in the QLI loan that the escrow payment would be applied to the underlying obligation. Yet, Kent alleges, the payments were not timely made and the 2012 taxes were sold at a tax sale. Thus,

Kent has alleged Seterus owed him a duty of care as a result of the relationship created by the QLI loan. Seterus's Motion to Dismiss Counts V-VII is DENIED.

## Conclusion

For the foregoing reasons, Defendant Seterus's Motion to Dismiss (Doc. 10) is GRANTED IN PART. The motion to dismiss Count I is GRANTED and the motion to dismiss Counts III, IV, V, VI, and VII is DENIED.[3]

**IT IS SO ORDERED.**

Date:  December 7, 2017                   /s/ Greg Kays
                                                                          GREG KAYS, CHIEF JUDGE
                                                                          UNITED STATES DISTRICT COURT

---

[3] Counts II and VII are not against Seterus.