IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| KELLY W. KENT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:17-CV-00257-DGK |
| | ) | |
| SETERUS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING IN PART DEFENDANT QUICKEN LOAN, INC.'S MOTION TO DISMISS

This case arises out of unpaid real estate taxes. Plaintiff Kelly Kent ("Kent") alleges that he made payments to his mortgage company, including amounts for real estate taxes, but that the taxes were never paid to the taxing authority. Kent is suing two lenders, a loan servicer, and a company that provided property tax reporting and monitoring services on his loan.

Now before the Court is Defendant Quicken Loan, Inc.'s ("QLI") motion to dismiss (Docs. 65 & 97). As explained below, the motion is GRANTED IN PART.

**Background**

The third amended complaint (Doc. 92) alleges the following:

Kent purchased a condo in Cook County, Illinois in 2007. On July 19, 2012, he refinanced his loan and in doing so, obtained a mortgage loan (the "Loan") through QLI. Kent arranged an escrow account with QLI for payment of the property taxes and insurance ("Escrow Items") on the condo. The escrow agreement requires Kent to pay QLI for the Escrow Items and that QLI would apply those payments to the underlying obligation. The escrow agreement states QLI has the ability to waive Kent's obligation to pay for any or all of the Escrow Items and that QLI would provide Kent an annual accounting of the Escrow Items.

On July 27, 2012, QLI sold or assigned its rights and interest in the Loan to Defendant Federal National Mortgage Association ("Fannie Mae"). On September 1, 2012, QLI sold or assigned the servicing rights in the Loan to Defendant Seterus, Inc. ("Seterus"). Plaintiff alleges that Seterus was outsourcing the property tax reporting and monitoring services to Defendant Lereta, LLC ("Lereta") during this time.

During the relevant time, Kent made timely payments on his loan and the Escrow Items. He received yearly mortgage statements reflecting the beginning and ending balance of his loan, beginning and end balance of his escrow account, and the real estate taxes paid. Nevertheless, on November 10, 2016, Kent learned his tax year 2012 real estate taxes owed to Cook County, Illinois, had been sold to ATCF II Illinois, LLC ("ATCF") at the county's annual tax sale, due to non-payment. Later, Kent learned that his real estate taxes for tax years 2013, 2014, and 2015 also had not been paid, despite his yearly mortgage statements indicating they had.

Real estate taxes in Cook County, Illinois, are payable in two installments. The first installment is due the first business day in March, and the second due date is generally sometime in August or September.

Kent alleges that when QLI sold its interest in the Loan to Fannie Mae and/or sold its servicing rights in the Loan to Seterus, it provided the incorrect property account number PIN, thereby causing his real estate taxes to go unpaid. Kent also alleges this error went unnoticed for years by the other Defendants.

On December 8, 2016, Kent received an escrow account statement indicating the account had a deficiency of $4,252.86. Then on January 3, 2017, Fannie Mae, Seterus, and/or Lereta redeemed the delinquent real estate taxes, including those sold to ATCF, for $9,782.70. This redemption payment included penalties of $1,176.56. Kent continued to receive statements

claiming the escrow account had a shortage. Kent alleges Defendants increased his escrow payment to cover the shortfall caused, at least in part, by the penalties assessed for the late payment of his taxes.

Initially, Kent sued Lereta and Seterus, but on October 23, 2017, amended his complaint to add QLI as a party.

In his third amended complaint, Kent alleges seven counts against Defendants for breach of contract, breach of fiduciary duty, and various common law negligence claims. QLI moved to dismiss the claims against it. After the motion was fully briefed, Kent moved to amend the complaint to clarify certain facts alleged. In granting the motion to amend his complaint, the Court permitted the parties to file supplemental briefing on the pending motion to dismiss.

## Standard

To survive a 12(b)(6) motion to dismiss, the complaint must do more than recite the bare elements of a cause of action. *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009). Rather, it must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although a complaint is not required to have detailed factual allegations, a plaintiff must provide more than mere "labels and conclusions" or "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 545. In reviewing the complaint, the court assumes the facts are true and draws all reasonable inferences from those facts in the plaintiff's favor. *Monson v. Drug Enf't Admin.*, 589 F.3d 952, 961 (8th Cir. 2009).

## Discussion

In the third amended complaint, Kent alleges three claims against QLI: Count I - breach of contract, Count II - breach of fiduciary duty, and Count V - negligence. QLI argues the third amended complaint should be dismissed in its entirety because Kent's claims are barred by the

statute of limitations, Missouri law does not recognize a duty between lender and borrower, and his tort claims are barred by the economic loss doctrine.

**I.     The statute of limitations does not bar Kent's claims.**

QLI argues Kent's claims are barred by the statute of limitations because Kent filed his first amended complaint later than five years from when his damages were sustained or capable of ascertainment.

The parties agree the Missouri's[1] five year statute of limitations apply, but disagree as to when Kent's damages were sustained and capable of ascertainment, which defines when a cause of action accrues under Missouri law. *See* Mo. Rev. Stat. § 516.100.

In construing § 516.100, Missouri courts have held that "damage is capable of ascertainment at the time when plaintiff could have first maintained the action to a successful suit." *Vandenheuvel v. Sowell*¸ 886 S.W.2d 100, 102 (Mo. Ct. App. 1994). This occurs when the damage "can be discovered or made known." *Id*. In other words, "[t]he statute of limitations begins to run when plaintiff's right to sue arises." *Id*. This is the point when the damage is "*capable of ascertainment*, although not actually discovered or ascertained." *Id.* (quoting *Carr v. Anding*, 793 S.W.2d 148, 150 (Mo. Ct. App. 1990) (internal quotation marks omitted) (emphasis in original).

In its argument, QLI asserts Kent's damages were sustained and capable of ascertainment on the date his real estate taxes became overdue and unpaid, which it alleges was on August 2, 2012. Kent asserts QLI is looking at the wrong years' taxes. Kent's complaint centers on his tax year 2012 taxes that were due in calendar 2013. Kent states that for tax year 2012, the first year for which his taxes were not paid, the first installment was due on March 1, 2013, and the second installment was due no earlier than August 1, 2013.

---

[1] The parties agree Missouri law applies.

4

The Court finds Kent filed his complaint against QLI within the five year limitations period. Kent's damages were sustained and capable of ascertainment on the date his real estate taxes became overdue and unpaid. Accepting the facts in the third amended complaint as true, Kent's damages were capable of ascertainment no earlier than August 1, 2013, the due date of the second payment for his tax year 2012 real estate taxes. Kent added QLI as a party on October 23, 2017, within the five year limitations period. Thus, Kent's claims are not barred by the statute of limitations.

## II.   Count II for breach of fiduciary duty is dismissed.

Next, QLI argues that Missouri does not recognize a fiduciary relationship between a lender and a borrower, and thus, his claim for breach of fiduciary duty must be dismissed. *See Hutcheson v. JPMorgan Chase Bank, N.A.*, No. 6:14-cv-03499-MDH, 2015 WL 1401225, *4 (W.D. Mo. Mar. 26, 2015) (finding "the relationship between a borrower and lender is that of a debtor and creditor and typically does not constitute a fiduciary relationship.") (citing *Hall v. NationsBank*, 26 S.W.3d 295, 297 (Mo. Ct. App. 2000)).

Kent's theory is that QLI owed him a fiduciary duty as an agent in escrow, not as a lender. Whether a lender owes a duty to a borrower as an agent in escrow is unclear in Missouri. *Luberda v. Regions Bank*, No. 4:10 CV 1638 DDN, 2011 WL 2600412, at *4 (E.D. Mo. June 29, 2010) *aff'd*, 445 F. App'x 893 (8th Cir. 2011) (applying Missouri law); *see also Hutcheson,* 2015 WL 1401225, at *4. "Typically, where there is an express escrow agreement, the agent's failure to strictly follow the terms of the agreement is a breach of fiduciary duty that constitutes a tort." *Hutcheson,* 2015 WL 1401225, at *4 (citing *S. Cross Lumber & Millwork Co. v. Becker*, 761 S.W.2d 269, 272 (Mo. Ct. App. 1988)). "[B]y definition an escrow agent is not a party to the transaction." *UT Commc'ns Credit Corp. v. Resort Dev., Inc.*, 861 S.W.2d 699, 710 (Mo. Ct. App.

5

1993). An escrow agent is a "third person" who is "a stranger to the instrument, not a party to it, or a person so free from any personal or legal identity with the parties to the instrument as to leave him free to discharge his duty as a depositary to both parties without involving a breach to either." *A.T. Knopf, Inc. v. Richardson*, 674 S.W.2d 174, 176 (Mo. Ct. App. 1984). An escrow agent is "strictly bound to perform the duties specified in an escrow agreement; neither party can alter the terms of an escrow agreement or forbid an escrow agent from performing his or her duties without the other party's consent." *Rivermont Vill., Inc. v. Preferred Land Title, Inc.*, 371 S.W.3d 858, 863 (Mo. Ct. App. 2012).

QLI argues this case is analogous to *Hutcheson*, holding the lender was not an escrow agent because it found the lender was not a disinterested third party. *Hutcheson* explained that the lender acted in its own self-interest to ensure taxes and insurance premiums were paid on the mortgaged property so that it could protect the priority of its lien interest. *Hutcheson* also considered the terms of the escrow agreement and noted that the lender had the ability to waive payment of escrowed funds and/or raise the monthly escrow payment. Given those two findings, *Hutcheson* held the lender was "not merely a passive enforcer" and accordingly, did not owe a fiduciary duty to the lender as an agent in escrow. *Hutcheson,* 2015 WL 1401225, at *5.

Kent argues his case is distinguishable from *Hutcheson* because here, QLI sold its interest in the Loan to Fannie Mae while retaining the servicing aspect of the Loan for some period of time. Kent argues because QLI retained the servicing interest in the Loan after selling the ownership interest, QLI could not have been acting in its own self-interest by making sure the taxes and insurance premiums were paid in order to protect the priority of its lien interest.

The Court finds QLI was not acting as an agent in escrow. During the time QLI was both the lender and the servicer, it was not acting as a disinterested third party, rather it was acting in

its own self-interest to ensure the taxes and insurance premiums were paid to protect its lien interest. Even considering the time after QLI only service the Loan, the provision of the escrow agreement that allows QLI to waive payment of the Escrow Items supports finding QLI was not a disinterested third-party of the escrow agreement. Accordingly, QLI's motion to dismiss Count II is granted.

### III. Kent states a claim for negligence.

Next, QLI argues Kent's negligence claim fails as a matter of law because it did not owe a duty of care to Kent.

Under Missouri law, a "contractual relationship between a lender and borrower alone does not establish a tort duty on the part of the lender." *Wivell v. Wells Fargo Bank, N.A.*, 773 F.3d 887, 900 (8th Cir. 2014). However,

> where the parties have entered into a contract, [Missouri's] common law has imposed the duty to perform with skill, care, and reasonable expedience and faithfulness in regard to the thing to be done or accomplished within the contract. The negligent failure to observe and perform any portion of that duty gives rise to an action in tort as well as an action for breach of contract.

*Autry Morlan Chevrolet Cadillac, Inc. v. RJF Agencies, Inc.*, 332 S.W.3d 184, 193 (Mo. Ct. App. 2010) (citations omitted).

Here, Kent alleges one of the things to be accomplished by the escrow agreement was paying the real estate taxes on Kent's condo. Yet, Kent alleges, the payments were not timely made and the tax year 2012 taxes were sold at a tax sale. Kent further alleges QLI as the Loan servicer held itself out as possessing superior knowledge and skill with respect to the thing to be accomplished by the contract, i.e. proper payment of the real estate taxes. Thus, Kent has alleged he and QLI had more than a lender-borrower relationship through QLI's duties under the escrow agreement as a loan servicer. These allegations give rise to a negligence claim and establish QLI

7

owed Kent duty to use ordinary care. *See Lonergan v. Bank of Am., N.A.*, No. 2:12-CV-04226-NKL, 2013 WL 176024 (W.D. Mo. Jan. 16, 2013) (holding that a bank, in its capacity as a loan servicer, owed a duty to exercise reasonable care in providing the borrowers with accurate information). QLI's motion to dismiss Count V is denied. *Cf. Wivell*, 773 F.3d at 900 (holding the plaintiff failed to state a negligence claim for improperly applying payments, calculating interest and fees, and servicing his loan, because he alleged nothing more than a contractual lender-borrower relationship); *Hutcheson,* 2015 WL 1401225, at *4 (citing to *Wivell* and holding the lender did not owe the borrower a duty to use ordinary care in the receipt, retention, and application of escrow payments).

**IV. Because Kent alleges a special relationship exists between him and QLI, the Court cannot find the economic loss doctrine bars his tort claims.**

Lastly, QLI argues the economic loss doctrine bars Kent's tort claims. The economic loss doctrine restricts a plaintiff's right to recover in tort for economic harm that is contractual in nature. *Dubinsky v. Mermart, LLC*, 595 F.3d 812, 819 (8th Cir. 2010). An exception exists when the contract recognizes a special relationship between the parties. *Bus. Men's Assurance Co. of Am. v. Graham*, 891 S.W.2d 438, 453 (Mo. Ct. App. 1994). As explained above, Kent has alleged sufficient facts that, if proven, would establish the parties' relationship was more than contractual in nature. Accordingly, the Court cannot find the economic loss doctrine bars Kent's tort claims.

**Conclusion**

For the foregoing reasons, QLI's motion to dismiss (Doc. 65) is GRANTED IN PART. Count II for breach of fiduciary duty is dismissed.

**IT IS SO ORDERED.**

Date: July 20, 2018                    /s/ Greg Kays
　　　　　　　　　　　　　　　　　　GREG KAYS, CHIEF JUDGE
　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT COURT